UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **FIRST ACCEPTANCE INSURANCE COMPANY, INC.,** ) ) ) | |
| **Plaintiff,** ) ) | |
| vs. ) ) | Civil Action No. 5:23-cv-934-CLS |
| **GAYLIA ALLEN, KAIRA ALLEN, and TANYA PEARSON,** ) ) ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This action was commenced by First Acceptance Insurance Company, Inc., against three related defendants: *i.e.*, *Gaylia Allen*, the mother of *Tanya Pearson*,[1] and the grandmother of *Kaira Allen* (who also is the daughter of Tanya Pearson).[2] The company asks the court to enter a judgment declaring whether coverage exists under a personal automobile insurance policy issued to Gaylia Allen. This opinion addresses First Acceptance's motion for summary judgment. Doc. no. 25.

Neither Tanya Pearson nor Kaira Allen responded to the complaint. Consequently, the clerk of court entered default against them on February 14, 2024.[3]

---

[1] Doc no. 25-1 (Gaylia Allen Deposition), at 20.

[2] *Id*. at 22.

[3] Doc. no. 27; *see also* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Note well, however, that default

Gaylia Allen, who appears *pro se*, was ordered to respond to the motion for summary judgment by March 6, 2024, but failed to do so. Even so, the merits of that motion still must be addressed. *See, e.g., United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004) (holding that a district court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion").

## I. SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman*

---

*judgment* has not yet been entered against either defendant. *See* doc. no. 24 (Order denying plaintiff's motions for default judgment, but "without prejudice to [plaintiff's right to] refile in compliance with Federal Rule of Civil Procedure 55(b), following entry of default by the clerk of court"); *e.g.*, *Sun v. United States*, 342 F. Supp. 2d 1120, 1124 n.2 (N.D. Ga. 2004) (observing that entry of default by the clerk of court under Rule 55(a) is a prerequisite to entry of default *judgment* pursuant to Rule 55(b)).

*v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-moving party are not unqualified, however.  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983) (alteration supplied).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis and alteration supplied).  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial*

*Company v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.  SUMMARY OF RELEVANT FACTS

This controversy grew out of a motor vehicle collision that occurred in Arlington, Texas, on November 5, 2021.  Gaylia Allen and her daughter, Tanya Pearson, who then resided in Texas,[4] were in a 2018 Ford Focus automobile.  Tanya was driving,[5] and Gaylia was in the passenger seat.[6]  They were stopped at the traffic light that controlled the intersection of Avenue K with North Watson Road in Arlington.[7]  A second vehicle, which was being driven at a high rate of speed along North Watson Road by an individual named Ryan Singh, struck the front of the stationary Ford Focus while executing a left turn onto Avenue K.  Singh fled the scene of the accident without stopping to render aid.[8]  Both Tanya and Gaylia sustained minor injuries, but neither requested treatment or was transported to a hospital.[9]

Following the collision, Gaylia and Tanya sought uninsured/underinsured motorist benefits under the personal automobile insurance policy that had been issued

---

[4] Doc no. 25-1 (Gaylia Allen Deposition), at 22.

[5] *Id*. at 37 (Q.  "But why was Tanya driving Kiara's [*sic*] Ford Focus at the time of the accident?"  A.  "She was driving me around.").

[6] *Id*. at 35.

[7] Doc. no. 1-3 (Police Report), at 3.

[8] *Id*.; doc no. 25-1  (Gaylia Allen Deposition), at 33-38.

[9] Doc. no. 1-3 (Police Report), at 2-3.

4

to Gaylia by First Acceptance in Huntsville, Alabama, on July 30, 2021.[10]  That policy provided coverage for two motor vehicles:[11] *i.e.*, a 2016 Chevrolet Equinox that was Gaylia Allen's primary vehicle;[12] and, the 2018 Ford Focus automobile struck by the hit-and-run driver on November 5, 2021.  The Ford Focus was jointly owned by Gaylia and her granddaughter as a result of Gaylia's act of co-signing the loan obtained for Kaira's purchase of the auto, but it was Kaira's primary vehicle.[13]

On the date that the subject policy was issued to Gaylia, she resided in Huntsville, Alabama at the address listed in the policy:  4007 McVay Street, Apartment B.[14]  During the year prior to that, however, she had "lived in an apartment off of Drake Avenue . . . in Huntsville"[15] with her granddaughter, Kaira, who "stayed there part-time"[16] for a couple of months[17] while "working at a place on the park —

---

[10] Doc. no. 25-2 (Alabama Personal Auto Policy CSAL 334725), at ECF 4 (providing uninsured/underinsured motorist benefits in the amounts of $25,000 per person, and $50,000 per accident).  **NOTE**: "ECF" is an acronym formed from the initial letters of the name of a filing system that allows parties to file and serve documents electronically (*i.e.*, "Electronic Case Filing").  When the court cites to pagination generated by the ECF header, it will, as here, precede the page number(s) with the letters "ECF."

[11] *Id*.

[12] Doc no. 25-1 (Gaylia Allen Deposition), at 31-32.

[13] *Id*. at 32 ("That's the vehicle Kiara [*sic*] drove. . . . I cosigned for that.").

[14] *Id*. at 23, 31; doc. no. 25-2 (Insurance Policy), at ECF 4.

[15] Doc no. 25-1 (Gaylia Allen Deposition), at 23.

[16] *Id*. at 24.

[17] *Id*. at 26.

right there next to McDonald's."[18]

Both Gaylia and Kaira were listed in the policy as "Rated Drivers."[19] Indeed, the application which had been submitted by Gaylia on July 30, 2021, requesting insurance coverage — a document which, by its terms, became a part of First Acceptance's policy[20] — listed both Gaylia and Kaira as "Rated Drivers."[21] That document also stated that "All vehicles listed on this application are garaged at least ten (10) months of the year at the address listed on this application,"[22] and identified "Huntsville, AL 35805" as the address at which "the insured vehicle(s) are principally garaged."[23] Further, the application recited that "[i]t is the applicant's responsibility

---

[18] *Id.* at 25.

[19] Doc. no. 25-2 (Insurance Policy), at ECF 5.

[20] Doc. no. 25-3 (Insurance Application), at ECF 2 ("I hereby apply to the Company for a policy of insurance as set forth in this application on the basis of the statements contained herein. *By signing below I agree that this application becomes a part of my policy . . . .*") (boldface omitted, italicized emphasis supplied).

[21] *Id.* at ECF 4 (**Rated Drivers:** "The following drivers have been identified by the applicant as being either rated or excluded. The application has confirmed that there are no additional persons, aged 15 or older who are household members, who may operate the insured vehicle(s) on a regular or frequent basis, or who are the titled owner of any of the listed vehicles.") (emphasis in original).

[22] *Id.* at ECF 2, ¶ 2.

[23] *Id.* at ECF 4 ("**Vehicle Garaging Address:** The following address is where the insured vehicle(s) are principally garaged.") (emphasis in original). *See also* doc. no. 25-2 (Insurance Policy), at ECF 4 (Declarations Page) (stating that "The auto(s) or trailer(s) described in this policy is/are principally garaged at the above address [*i.e.*, 4007 McVay St., Apt. B, Huntsville AL 35805] unless otherwise stated"); doc. no. 25-1 (Gaylia Allen Deposition), at 5 (confirming that 4007 McVay Street Southwest, Apartment B, was her residence address, and that she had lived there for "maybe a year and a half" prior to the February 7, 2023 deposition).

to notify the Company if they move and/or if the garaging address changes."[24]

Gaylia's signature on the application tacitly confirmed her understanding that:

1. As state law allows, my policy may be rendered null and void and no coverage may be provided for an accident or claim involving:

   a. An operator of a vehicle who is specifically excluded by endorsement;

   b. An operator of a vehicle who is not listed on the declarations page and for whom no premium has been paid; and

   c. An operator of a vehicle who does not have my permission to use the vehicle.

2. As state law allows, no coverage is provided and the policy shall be null and void from inception:

   a. If any information in this application is false, misleading, or would materially affect the policy premium or acceptance of the risk by the Company; . . . .

Doc. no. 25-3 (Insurance Application), at ECF 3.  Finally, the body of First Acceptance's policy contains the following provisions that are relevant to the present dispute:

> **PART C – UNINSURED MOTORIST COVERAGE**
>
> **INSURING AGREEMENT**
>
> **We** will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of

---

[24] *Id.*

7

**bodily injury** sustained by an **insured** and caused by an **auto accident.**

Doc. no. 25-2 at 14 (boldface in original).

## PART E — GENERAL PROVISIONS

1. This policy is issued in reliance upon **your** statements made in the **application**.

2. **Your** statements made in the **application** are true and complete.

3. **Your** statements made in the **application** are incorporated into and form a part of this policy.

4. **Your** statements as reflected in the **Declarations page** and all endorsements are incorporated into and form a part of this policy.

5. The insurance **application**, **Declarations page** and all endorsements are incorporated into and form a part of this policy.

6. Any material misrepresentation on **your** part may render this policy null and void from inception.

7. This policy embodies all agreement existing between **you** and **us**; and

8. **You** have the affirmative obligation to report all accidents regardless of fault and to promptly advise us of any change in circumstances or in the information **you** supplied to us on **your application**.

\*   \*   \*   \*

**CHANGES**

The premium charged is based on information we have received from you or other sources. You agree:

> 1. That if any of this information material to the development of the policy premium is incorrect, incomplete or changed, **we** may adjust the premium accordingly during the policy period.
>
> 2. To cooperate with **us** in determining if this information is correct and complete, and to advise **us** of any changes during the policy period within seven (7) days of the change.
>
> \* \* \* \*

*Id.* at 23 (boldface in original).

> **MISREPRESENTATION AND FRAUD**
> *Fraud or Misrepresentation in the Application or Notication of Change*
>
> The statements made by you in the application are deemed to be representations. If any representation contained in the application is false, misleading, or materially affects the acceptance or rating of the risk by us, this policy will be void from its inception.
>
> \* \* \* \*
>
> This provision shall apply to statements or representations that contain fraudulent, false, misleading or deceptive statements, direct misrepresentations, and omissions or concealments of fact. **We** may void this policy or deny coverage even after the occurrence of an **accident** or **loss**. This means that **we** will not be liable for any claims or damages that would otherwise have been covered in the absence of the fraud or misrepresentation. No coverage will be afforded to any **relative** or **resident** in **your** household unless named in the application for coverage and/or listed on the **Declarations Page** or added by endorsement.

*Id.* at 26 (boldface in original).

## II.  DISCUSSION

Where, as here, a federal court's jurisdiction is based upon the diversity statute, 28 U.S.C. § 1332(a), the choice of law principles of the state in which the court sits must be applied.  *St. Paul Fire and Marine Insurance Company v. ERA Oxford Realty*, 572 F.3d 893, 894 n.1 (11th Cir. 2009).  Under Alabama law, the principle of *lex loci contractus* — the law of the state where the contract was formed — controls.  *See Cherokee Insurance Company, Inc. v. Sanches*, 975 So. 2d 287, 292 (Ala. 2007).  The subject insurance policy was issued by First Acceptance in Huntsville, Alabama.  Therefore, the substantive law of this state applies.

"Under Alabama law, it is well established 'that when doubt exists as to whether coverage is provided under an insurance policy, the language used by the insurer must be construed for the benefit of the insured.'"  *ERA Oxford Realty*, 572 F.3d at 898 (quoting *St. Paul Mercury Insurance Co. v. Chilton-Shelby Mental Health Center*, 595 So. 2d 1375, 1377 (Ala. 1992)).  Where the provisions are unambiguous, however, a court must enforce the insurance contract as written.  *Johnson v. Allstate Insurance Co.*, 505 So. 2d 362, 365 (Ala. 1987).

First Acceptance advances two arguments in support of its position that the policy issued to defendant does not provide coverage for the hit-and-run collision that occurred in Texas on November 5, 2021.  First, the company argues that the insurance

policy issued to Gaylia Allen is void because she misrepresented the fact that the vehicle would be principally garaged in Huntsville, Alabama. Specifically, First Acceptance contends that the co-owner of the Ford Focus, Gaylia's granddaughter, Kaira, resided in Texas on July 30, 2021: the date on which Gaylia applied for the insurance. Second, First Acceptance argues that defendant failed to provide timely notice of a change in the garaging location of the vehicle.

As support for the first contention, First Acceptance points to defendant's examination under oath, where she testified as follows:

> Q. * * * So at the time you were living at the 4007 McVay Street [address in Huntsville], where was Kiara [sic] Allen residing?[25]
>
> A. Kiara Allen probably was at — probably — Kiara Allen probably was — Hold on. You said this was July?
>
> Q. Yes, ma'am. July of 2021.
>
> A. She was in Texas.
>
> Q. Okay. Now, had she already moved back to Texas with her mother [Tanya Pearson] at this point?
>
> A. She *probably* had.
>
> Q. Okay. Did she have the vehicle with her in Texas, the Ford Focus?
>
> A. It was her vehicle, so I'm sure. Yes.

---

[25] This misspelling of the name of Kaira Allen ["Kiara" *sic*] appears throughout the transcript of the examination of Gaylia Allen.

Doc. no. 25-1, at 33 (alterations and emphasis supplied).  That testimony is equivocal and unconvincing.  Gaylia Allen's examination under oath demonstrates that she had great difficulty recalling basic information about many things, such as:  the addresses of her past residences;[26] the dates at which she resided in those places;[27] the name of her daughter's best friend, whom Gaylia had known since her daughter and the friend were children;[28] the name of the place at which Kaira worked while living in Huntsville;[29] the Texas residence address of Gaylia's daughter, Tanya;[30] the make, model, and color of Tanya's automobile;[31] and many other things.

Both Gaylia and Tanya testified that Kaira moved back and forth between Alabama and Texas during the period encompassing the date on which the insurance policy had been issued (July 30, 2021) and the date of the subject hit-and-run incident (November 5, 2021).[32]  However, the testimony of Kaira Allen, the person with the

---

[26] *See*, *e.g.*, doc. no. 25-1 (Gaylia Allen Deposition), at 5; *id*. at 12-14 (could not recall how long before the issuance of her driver's license on August 12, 2021, she had moved to the address listed on the license); *id*. at 26-29.

[27] *Id*. at 6, 12.

[28] *Id*. at 16-18.

[29] *Id*. at 25.

[30] *Id*. at 34 ("I don't know exactly where she live [*sic*] in Texas.  She might live in Arlington."); *id*. at 36.

[31] Doc. no. 25-1 (Gaylia Allen Deposition), at 37-38.

[32] *Id*. at 25-26; doc. no. 1-4 (Examination Under Oath of Tanya Pearson), at 10-11 (Kaira Allen traveled back and forth between Alabama and Texas during the period spanning July of 2021 through May of 2022).

most knowledge of the "garaging" location of the 2018 Ford Focus on the date the policy was issued, was not presented to the court. Accordingly, the court concludes that a genuine issue of material fact remains as to whether Gaylia Allen misrepresented the garaging location of the 2018 Ford Focus, such that the policy was void from the beginning.

For much the same reason, the second contention also must fail. The evidence presented by First Acceptance does not conclusively demonstrate that the 2018 Ford Focus was *not* garaged at the address listed in the policy, or that the garaging address changed after the policy was issued, thereby triggering defendant's obligation to notify First Acceptance.

In short, unresolved issues of material fact remain, and the motion for summary judgment is due to be denied.

A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** this 25th day of April, 2024.

_____
Senior United States District Judge